Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Ste. 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **NEW DIRECTION HOME HEALTH** | § | **CASE NO. 24-44654-mxm** |
| **CARE OF DFW INC.,** | § | **Chapter 11** |
| | § | |
| **Debtor.** | § | |

## DEBTOR'S PLAN OF REORGANIZATION
## <u>UNDER SUBCHAPTER V OF CHAPTER 11</u>

### Dated: March 17, 2025

# TABLE OF CONTENTS

Article I.       INTRODUCTION..................................................................................4

Article II.      DEFINITIONS ....................................................................................4

Article III.    VOTING ON THE PLAN AND OBJECTIONS ..................................8

Article IV.    BACKGROUND..................................................................................9
    4.1   Background of the Debtor and Events Leading to Bankruptcy ...........9
    4.2   Significant Events Since the Petition Date........................................9
    4.3   Assets of the Debtor ........................................................................9
    4.4   Liabilities of the Debtor .................................................................10
    4.5   Tax Consequences of the Plan .......................................................10

Article V.     LIQUIDATION ANALYSIS ............................................................11

Article VI.    PLAN OF REORGANIZATION.......................................................12
    6.1   Treatment of Unclassified Claims, Administrative Expense Claims, Priority
          Claims, and U.S. Trustee Fees .......................................................12
    6.2   Classification of Claims and Interests.............................................14
    6.3   Claims and Interests Impaired Under the Plan.................................14
    6.4   Treatment of Classified Claims and Interests Under the Plan ..........14
    6.5   Implementation of the Plan ............................................................15
    6.6   Feasibility of the Plan....................................................................16
    6.7   Provisions Regarding Distributions and Objections to Claims..........16
    6.8   Executory Contracts ......................................................................17

Article VII.   RESERVATION OF CLAIMS .........................................................17
    7.1   Reservation of Claims and Causes of Action...................................17
    7.2   Return of Fraudulent Transfers ......................................................18

Article VIII.  EFFECT OF CONFIRMATION, DISCHARGE, RELEASES
              AND INJUNCTION .........................................................................18
    8.1   Vesting of Property ........................................................................18
    8.2   Plan Creates New Obligations.........................................................18
    8.3   Legal Binding Effect ......................................................................18
    8.4   Discharge.......................................................................................18
    8.5   Satisfaction of Claims and Interests ...............................................19
    8.6   Modification of the Plan.................................................................19
    8.7   Retention of Jurisdiction ................................................................19

Article IX.    MISCELLANEOUS PROVISIONS .................................................20
    9.1   Request for Relief Under Bankruptcy Code § 1129(b)......................20
    9.2   Headings.......................................................................................20
    9.3   Due Authorization..........................................................................20
    9.4   Further Assurances and Authorizations ..........................................21

9.5     Applicable Law ................................................................................21
9.6     No Interest ......................................................................................21
9.7     Post-Confirmation Actions..............................................................21
9.8     Notices of Default ...........................................................................21
9.9     Notices..............................................................................................21
9.10    Payment Dates..................................................................................21
9.11    De Minimis Distribution .................................................................22

EXHIBITS:
        Exhibit 1 – Monthly Operating Reports
        Exhibit 2 – Schedule A/B
        Exhibit 3 – Projections

# ARTICLE I.  INTRODUCTION

This *Plan of Reorganization Under Subchapter V of Chapter 11* (the "Plan") is proposed by New Direction Home Health Care of DFW, Inc., the debtor in this Bankruptcy Case (the "Debtor").  This case was initiated by the filing of a voluntary petition for relief by the Debtor on December 17, 2024, under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.  This Plan is provided pursuant to the Bankruptcy Code to all the Debtor's known creditors and other parties in interest.  Under the Plan the Debtor will pay 100% of Allowed Secured Claims and Unsecured Claims pro-rata from a pool of $5,000.00 per month.  The details of the Plan are set out in Article VI of this document.

The Office of the United States Trustee appointed Behrooz P. Vida to serve as the Subchapter V Trustee in this Case (the "Trustee").  The Trustee is responsible for monitoring the Case and ensuring the Debtor's compliance with the applicable provisions of the U.S. Bankruptcy Code.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

# ARTICLE II.  DEFINITIONS

Except as expressly provided herein or unless the context otherwise requires, the terms set forth in this Article II shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

"**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

"**Allowed Amount**" means the amount of any Allowed Claim.

"**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

"**Assets**" means property of the Estate.

"**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

"**Ballot**" means the written ballot to be distributed to Creditors for voting on whether to approve this Plan of reorganization.

"**Bankruptcy Case**" or "**Case**" means this bankruptcy case pending before the Bankruptcy Court.

"**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

"**Bar Date**" means February 25, 2025, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

"**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

"**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

"**Claimant**" or "**Creditor**" means the holder of a Claim.

"**Class**" means any class into which Claims are classified pursuant to the Plan. Each subclass of a class shall be treated as a separate class.

"**Collateral**" means the real or personal property securing a Secured Claim.

"**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

"**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

"**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtors will seek Confirmation of this Plan.

"**Confirmation Order**" means the Order confirming this Plan.

"**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

"**Debtor**" means New Direction Home Health Care of DFW, Inc., the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor.

"**Disputed**" with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

"**Effective Date**" means the thirtieth (30th) day after the Confirmation Date.

"**Estate**" means the bankruptcy estate of the Debtor in this Case.

"**Fee Claim**" means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

"**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

"**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

"**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on

account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

"**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code.

"**Interest**" means any equity or ownership interest in the Debtor.

"**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

"**Order**" means an Order of the Bankruptcy Court.

"**Petition Date**" means December 17, 2024, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

"**Plan**" means this *Plan of Reorganization*, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

"**Priority Wage Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(4).

"**Priority Unsecured Claim**" means an Unsecured Claim entitled to priority under Bankruptcy Code § 507(a), except Priority Tax Claims and Priority Wage Claims.

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

"**Reorganized Debtor**" means the Debtor as it exists after Confirmation of the Plan.

"**Schedules and Statements**" means the Debtor's bankruptcy schedules A/B, D-H and the Statement of Financial Affairs.

"**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code §506(a). Should the value of the Collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the Collateral and a general Unsecured Claim for the remainder, pursuant to Bankruptcy Code §506(d).

"**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

## ARTICLE III.  VOTING ON THE PLAN AND OBJECTIONS

### 3.1    Who May Vote

You are entitled to vote on the Plan unless:

(1)    your Claim or Interest is Disputed (as defined herein);

(2)    your Class receives no distribution (presumed to reject the Plan);

(3)    your Class is "unimpaired" (presumed to accept the Plan – *See* Article VI to see if your Class is Impaired or unimpaired); or

(4)    your Claim is unclassified (and thus required by law to be paid in full).

If your Claim or Interest is Disputed, then you must file a motion and have it allowed for voting purposes (you must do that soon so that your motion can be heard before votes are counted. *See* Bankruptcy Rule 3018(a)).

### 3.2    How to Vote

Fill out and return the attached ballot (if you are entitled to vote) **by the deadline** and according to the other instructions in the enclosed order regarding voting and procedures.

### 3.3    Effect of Vote

After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan or that has not accepted the plan.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan.  A Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

### 3.4    Who May Object

Even if you are not entitled to vote, you may object to Confirmation of the Plan if you believe that the requirements for Confirmation are not met (and if you are a party in interest in this bankruptcy case). For the deadlines and procedures to object, see the enclosed order.

# ARTICLE IV.  BACKGROUND

## 4.1    Background of the Debtor and Events Leading to Bankruptcy

The Debtor's business consists of two separate business models operated within one business entity.  One portion of that business provides personalized and compassionate home health care services, while the other portion of the business operates a restaurant franchise (namely a Dickey's BBQ Pit).  The business operates at locations in Arlington, Texas and Grand Prairie, Texas, respectively.  The Debtor filed this case due to an inability to service debt obligations resulting from multiple high interest Merchant Cash Advance (MCA) loans and debt consolidation service that provided little to no debt relief, all of which were predicated by the economic effects of COVID-19 on the two business models.  The high interest rates coupled with the very short term payment schedules siphoned large amounts of operating funds from the business weekly rather than monthly that served only to address interest but little to no principal pay down.  Continuing to do so is not sustainable in the long run and negatively impacts the Debtor's business.

## 4.2    Significant Events Since the Petition Date

**a.**    The Court entered Interim Orders allowing Debtor to use cash collateral [Dkt. Nos. 32, 54, 58], with the Final Cash Collateral Motion scheduled to be heard on March 27, 2025.

**b.**    On March 11, 2025, the Court entered an order approving the Debtor's employment of Joyce W. Lindauer Attorney, PLLC as general bankruptcy counsel.  [Dkt. No. 60].

**c.**    On February 7, 2025, the Court entered an order granting Debtor's Motion to Waive Appointment of Patient Care Ombudsman.  [Dkt. No. 49].

**d.**    The Monthly Operating Reports filed by the Debtor during the Case are attached hereto as **Exhibit "1" (without bank statements)**.

## 4.3    Assets of the Debtor

The Debtor scheduled the following Assets owned as of the Petition Date:

| | |
|---|---:|
| Cash and cash equivalents | $580.44 |
| Deposits | $5,000.00 |
| Accounts Receivable | $36,389.00 |
| Inventory | $2,020.00 |
| Furniture, fixtures and equipment | $14,350.00 |
| Machinery, equipment and vehicles | $32,485.00 |
| Total Assets | $90,824.44[1] |

---

[1] Debtor also scheduled its Patient List with a value of $0.00.  Debtor does not believe this asset would have meaningful liquidation value due to the nature of its home health care line of business.

Such Assets are listed in detail on the Debtor's Schedule B, which is attached hereto as **Exhibit "2"**.

### 4.4 Liabilities of the Debtor

According to the Debtor's Schedules filed in this Case, the Debtor's liabilities (excluding Administrative Expense Claims) totaled $643,039.29 as of the Petition Date. Creditors may file Proofs of Claim that differ from the amounts shown in the Schedules.

The Debtor's liabilities are further described as follows:

**a.     Administrative Expense Claims.**

The Estates will be liable for certain Administrative Expense Claims pursuant to Bankruptcy Code §503(b) through the Confirmation Date, including Fee Claims of Joyce W. Lindauer Attorney, PLLC as the Debtor's bankruptcy counsel. Before the Debtor pays any Fee Claims, the Bankruptcy Court will have determined the reasonableness of such fees and expenses.

**b.     Priority Claims**

The Internal Revenue Service has a priority claim which is $69,824.44.

Tarrant County, Texas filed a priority claim for ad valorem taxes for $3,693.53.

The Texas Workforce Commission filed a claim, the priority portion of which is $12,625.92.

**c.     Secured Claims.**

Debtor scheduled a Secured Claim for Educational Employees Credit Union for $15,000.00.

Integrity Texas Funding, LP filed a Secured Claim for $10,000.00.

ARF Financial, LLC filed a claim, the Secured portion of which is $69,039.44 (calculated as the value of the Debtor's personal property net of two vehicles securing the aforementioned Secured Claims. The remainder is to be treated as an Unsecured Claim).

**d.     Unsecured Claims**

The Debtor scheduled total non-priority Unsecured Claims of $698,828.77.

### 4.5 Tax Consequences of the Plan

**a.     Disclaimer.**  The Debtor does not purport to provide tax advice to the holders of Claims. The following is intended only as a summary of possible federal income tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. The following is for information purposes only and is NOT tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's

individual circumstances. Accordingly, holders of Claims are urged to consult with their tax advisors about the federal, state, local, and foreign tax consequences of the Plan on their tax returns and tax liabilities.

**b.     Tax Consequences.** Implementation of the Plan may result in federal income tax consequences to holders of Claims or Interests and the Debtor. Tax consequences to a particular Claim or Interest holder may depend on the circumstances or facts regarding the Claim or Interest. IRS Publication 908, entitled "Bankruptcy Tax Guide" provides valuable information regarding the federal income tax aspects of bankruptcy. The "Bankruptcy Tax Guide" is available directly from the IRS online at http://www.irs.gov/pub/irs-pdf/p908.pdf.

**c.     Cancellation of Debt.** Cancellation of the Debtor's debt ("**COD**") is generally considered as taxable income of the Debtor. COD is the amount by which the indebtedness discharged exceeds any consideration given in exchange. However, there are exceptions which prevent COD from being treated as taxable income. To the extent the Debtor is insolvent or the Debtor is discharged in a bankruptcy proceeding, as is the case at bar, the Internal Revenue Code excludes COD from income. The statutory exclusion for COD from the Debtor's gross income in a Chapter 11 bankruptcy case arises where a discharge is granted by the Court as is requested in the Plan.

**d.     Holders of Allowed Claims.** The tax consequences associated with distributions under the Plan to the holders of an Allowed Claim will depend on, among other things: (i) the consideration received or deemed to have been received by the holder of any such Claim; (ii) whether the Allowed Claim holder reports income on an accrual or cash basis; (iii) the taxable year in which any distributions under the Plan are received by the Allowed Claim holder; (iv) whether the Claim was Allowed or Contested/Disputed as of the Effective Date; and (v) whether such Allowed Claim holder had previously written the obligation off as bad debt. ALLOWED CLAIM HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

## <u>ARTICLE V.  CHAPTER 7 LIQUIDATION ANALYSIS</u>

Section 1129(a)(7) of the Bankruptcy Code requires that a Chapter 11 plan of reorganization must provide at least as much value to each Impaired Creditor as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code.

In determining whether the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in Chapter 7. Such amounts must then be reduced by the costs and expenses of the liquidation. Further reductions would be required to eliminate cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy Priority Claims that are senior to general Unsecured Claims (and Administrative Expense Claims that may result from the termination of the Debtor's business and the liquidation of its assets).

The Debtor believes that in a Chapter 7 liquidation the Chapter 7 trustee would agree to lift the automatic stay to allow Secured Claimants to foreclose their liens on the Debtor's Assets. Although the Debtor has listed the value of its non-cash Assets as $90,244.00 in its Schedules, in such a foreclosure sale the proceeds of sale would likely be no more than 75% of that value, or $67,683.00.

Based on the above, the Debtor estimates that the results of a Chapter 7 liquidation would be as follows:

**Assets in Chapter 7 liquidation**

| | |
|---|---|
| Deposits (75%) | $3,750.00 |
| Accounts Receivable (75%) | $27,291.75 |
| Inventory (75%) | $1,515.00 |
| Furniture, fixtures and equipment (75%) | $10,762.50 |
| Machinery, equipment and vehicles (75%) | $24,363.75 |
| Total Assets | $67,683.00 |
| Less 5% liquidation costs for non-cash property | <$3,384.15> |
| **Total Assets** | **$ 64,298.85** |

**Liabilities**

| | |
|---|---|
| Administrative Expenses and UST Fees (estimated) | $15,000.00 |
| Priority Claims | $86,143.89 |
| Secured Claims | $94,039.44 |
| General Unsecured Claims | $698,828.77 |
| **Total Liabilities** | **$894,012.10** |

*NOTE: In a Chapter 7 as seen in the above chart, Priority Claims would receive 57.23% of their claims, while both Secured and Unsecured Claims would receive nothing.*

**Under this Plan, all Priority and Secured Creditors will receive payment of 100% of their Allowed Claims, and Unsecured Creditors will receive 43% of their Allowed Claims. Therefore, pursuant to the above liquidation analysis all Creditors will receive at least as much under this Plan as they would in a Chapter 7 liquidation.**

## ARTICLE VI.  PLAN OF REORGANIZATION

**6.1** **Treatment of Unclassified Claims, Administrative Expense Claims, Priority Tax Claims, and U.S. Trustee Fees**

**a.** **Unclassified Claims.** All Allowed Claims (except Administrative Expense Claims and Priority Tax Claims) are placed in Classes for all purposes, including voting

on, confirmation of, and distributions under this Plan. In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Allowed Priority Tax Claims have not been classified.

**b.** **Administrative Expense Claims.** Each holder of an Administrative Expense Claim under Bankruptcy Code § 503 shall receive either: (i) with respect to Administrative Expense Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Administrative Expense Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Administrative Expense Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

**1.** Fee Claims. Each professional person whose retention with respect to this Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Expense Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The Subchapter V Trustee is a professional in this case. The failure to file timely any such application as required shall result in the Fee Claim being forever barred and discharged. A Fee Claim, with respect to which a Fee Application has been properly filed, shall become an Administrative Expense Claim only to the extent allowed by Final Order. Fee Claims shall be paid either: (i) with respect to Fee Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Fee Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Fee Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

**2.** Administrative Expense Claims Bar Date. Any other person or entity who claims to hold an Administrative Expense Claim (other than a Fee Claim) shall be required to file with the Bankruptcy Court an application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely the application as required under this section) of this Plan shall result in the Claim being forever barred and discharged. An Administrative Expense Claim with respect to which an application has been properly filed and to which no timely objection has been filed or an objection has been filed but overruled by the Bankruptcy Court, shall become an Allowed Claim to the extent such Claim is allowed by Final Order.

**c.** **Priority Tax Claims.** The Claims will be paid in equal monthly installments of principal and interest (accruing at the statutory interest rate from the Petition date), commencing on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter for a total of sixty (60) months. These

Claimants shall retain their pre- and post-Petition Date statutory Liens securing these Claims until they are paid in full.

       **d.**       **Priority Wage Claims.** Any holder of an Allowed Priority Wage Claim within the meaning of Bankruptcy Code § 507(a)(4) will be paid in full in three (3) equal monthly installments of principal and interest at the rate of 2% per annum. Payments will commence on the first day of the first month following the Effective Date and continue on the first day of each month thereafter until paid in full. The Debtor believes there are no such Claims because they have been paid during the Case with the permission of the Court.

## 6.2    Classification of Claims and Interests

Claims against the Debtor, excluding Administrative Expense Claims, Priority Tax Claims and Priority Wage Claims, are divided into the following Classes:

**Class 1 Claims:** Allowed Priority Claims of Educational Employees Credit Union (EECU).

**Class 2 Claims:** Allowed Secured Claims of Integrity Texas Funding, LP

**Class 3 Claims:** Allowed Secured Claims of ARF Financial, LLC

**Class 4 Claims:** Allowed General Unsecured Claims.

**Class 5 Equity Interests:** Equity Interest Holders.

## 6.3    Claims and Interests Impaired Under the Plan

The Claims in all the above Classes are Impaired and entitled to vote on this Plan.

## 6.4    Treatment of Classified Claims and Interests Under the Plan; General Provisions Regarding Treatment of Claims.

All Allowed Secured Claimants shall retain all their liens on any Collateral securing their Claims.

No Claimant shall be entitled to a pre-payment penalty or yield maintenance premium if their Claim is paid early.

Should the value of the Collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the Collateral and an Unsecured Claim for the remainder.

**Class 1: Allowed Priority Claim of Educational Employees Credit Union (EECU).** This Claim shall be paid in full in 60 equal monthly installments of principal with interest thereon at the rate of 5% per annum. Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Effective Date. Interest shall begin to accrue on the Effective Date. To the extent that the Allowed Claim is less than the

value of the collateral then the bifurcated Allowed Unsecured Claim shall be treated in Class 4 of the Plan. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 2: Allowed Secured Claims of Integrity Texas Funding, LP.** This Claim shall be paid in full in 60 equal monthly installments of principal with interest thereon at the rate of 5% per annum. Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Effective Date. Interest shall begin to accrue on the Effective Date. To the extent that the Allowed Claim is less than the value of the collateral then the bifurcated Allowed Unsecured Claim shall be treated in Class 4 of the Plan. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 3: Allowed Secured Claims of ARF Financial, LLC.** This Claim shall be paid in full in 60 equal monthly installments of principal with interest thereon at the rate of 5% per annum. Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Effective Date. Interest shall begin to accrue on the Effective Date. To the extent that the Allowed Claim is less than the value of the collateral then the bifurcated Allowed Unsecured Claim shall be treated in Class 4 of the Plan. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 4: Allowed General Unsecured Claims:** Class 6 Claimants shall be paid pro-rata $5,000.00 monthly on a pro-rata basis over 60 months from the Effective Date, without interest. These Claims will be paid in equal monthly installments commencing on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter. These Claims are Impaired, and the holders of these Claims are entitled to vote to accept or reject the Plan.

**Class 5: Equity Interests.** Class 5 Equity Interests shall be retained.

### 6.5 Implementation of the Plan

**a. Source of Payments.** The Debtor intends to make all payments required under the Plan from available cash and income from the business operations of the Debtor.

**b. Risk Factors.** *Consider carefully the factors set forth below and the other information set forth in this Plan prior to voting on the Plan. These risk factors should not, however, be regarded as constituting the only risks involved with the Plan and its implementation.*

Although the Debtor believes that the Plan satisfies all requirements necessary for Confirmation, there can be no assurance that the Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes to accept the Plan as modified.

### 6.6 Feasibility of the Plan

The Debtor believes that the Plan is feasible because all creditors with Allowed Claims will be paid under fair and equitable terms. Projections for the feasibility of the Plan are attached hereto as **Exhibit "3"** and incorporated herein by this reference.

### 6.7 Provisions Regarding Distributions and Objections to Claims

**a. Time of Payment.** The first month in which payments will be made under this Plan will be as provided by the terms of this Plan.

**b. Delivery of Payment.** All payments or distributions required under this Plan shall be made to holder of the applicable Claim at: (i) the address set forth on the Proofs of Claim filed by such holders (or at the last known address of such holders if no Proof of Claim is filed or if the Debtor has been notified of a change of address); (ii) the address set forth in any written notices of address change delivered to the Debtor after the date of any related Proof of Claim; or (iii) if neither of the foregoing is applicable, at the addresses reflected in the Debtor's bankruptcy schedules, unless otherwise agreed to by the holder of such Claim and the Debtor.

**c. Confirmation under Section 1191(b) – Distributions by Trustee.** If the Plan is Confirmed as a non-consensual plan under the provisions of 11 U.S.C. section 1191(b), the Trustee shall serve as the payment administrator pursuant to 11 U.S.C. section 1194(b) for the purpose of making distributions under the Plan and shall be compensated for their work as payment administrator at the same hourly rate as may be approved by the Court for his pre-Confirmation work in this Case. The Debtor shall submit such funds as are necessary for the Trustee to make distributions under the Plan no later than seven (7) days prior to the date such distributions are due.

**d. No Distribution Pending Allowance or Estimation of Claims.** No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim or Allowed Interest, as determined by Final Order. No holder of a Claim shall be entitled to any payment under the Plan if such holder has retained property of the Estate.

**e. Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of prepetition Claims at any time prior to sixty (60) days after the Effective Date or, as to Claims based upon the Debtor's rejection pursuant to this Plan of an executory contract or unexpired lease, at any time prior to thirty (30) days after the filing of any such rejection Claim. Any Proof of Claim filed after the Bar Date shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

**f.       Suspension of Payments on Disputed Claims.** If any Claim has been objected to within the time required, the Debtor shall segregate and set aside, from the funds on hand for distribution to the Claimant's Class, funds sufficient to satisfy the payment otherwise due on the Claim according to the provisions of the Plan.  In the event that the claim objection is overruled or a dispute is resolved favorably to the party asserting the Claim, then the funds shall be paid to the Creditor in accordance with applicable Class provisions.  If the Disputed Claim is disallowed, the funds segregated in deference to the Claim shall be disbursed to other parties in interest, according to the applicable provisions of the Plan.

### 6.8       Executory Contracts

**a.       General Provisions.** "Assumption" of an executory contract or unexpired lease means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.  If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to Confirmation, unless the Court has set an earlier time.

**b.       General Rejection of Executory Contracts and Unexpired Leases.** Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under this section of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, or that were entered after the Petition Date, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

## ARTICLE VII.  RESERVATION OF CLAIMS

### 7.1       Reservation of Claims and Causes of Action

Any and all claims, causes of action, cross claims, or counterclaims listed in the Debtor's Schedules attached hereto or otherwise held or assertable by the Debtor, including but not limited to: (i) any claim or cause of action under a policy of liability insurance or otherwise; (ii) the Avoidance Actions; and (iii) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor have or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special

relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by the Debtor as of the Confirmation Date.  It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's Schedules and Statements.

### 7.2     Return of Fraudulent Transfers

Any Creditor determined to have received a transfer that is voidable pursuant to sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to the Debtor the determined amount of the avoided transfer prior to receiving any distribution under this Plan.

## ARTICLE VIII.  EFFECT OF CONFIRMATION, DISCHARGE, RELEASES AND INJUNCTION

### 8.1     Vesting of Property

On the Confirmation Date of the Plan, all property of the Estate shall vest in the Debtor pursuant to sections 1141(b) and (c) of the Bankruptcy Code, free and clear of all Claims and interests except as otherwise provided in this Plan.  This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan unless such Lien or encumbrance is specifically retained in the Plan.

### 8.2     Plan Creates New Obligations

Except as otherwise provided in the Plan, (1) the payment terms promised in the Plan constitute new contractual obligations that replace any payment terms that existed prior to the Effective Date, and (2) all rights and obligations other than those new payment terms continue to apply.

### 8.3     Legal Binding Effect

The provisions of this Plan shall bind all holders of Claims and interests, whether or not they accept this Plan.

### 8.4     Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the

first 5 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### 8.5     Satisfaction of Claims and Interests

Except as otherwise provided by the Plan, the consideration distributed under the Plan shall be in complete satisfaction of all Claims of any Creditor, including Claims arising prior to the Effective Date.

### 8.6     Modification of the Plan

**a.**     **Prior to Confirmation.** The Debtor may modify this Plan at any time prior to Confirmation, provided the modification complies with the requirements of sections 1122, 1123 and 1127 of the Bankruptcy Code. Upon the filing of any such modifications with the Bankruptcy Court, the Plan, as modified, becomes the Plan.

**b.**     **After Confirmation.** The Debtor may modify the Plan at any time after Confirmation, upon compliance with Bankruptcy Code § 1127. The Debtor or their attorney shall provide notice of any such proposed modification to all Creditors and other parties in interest in these Chapter 11 proceedings. If, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interest of the Creditors, the Bankruptcy Court may modify the Plan without notice to Creditors or may modify the Plan upon notice only to those Creditors that the Bankruptcy Court deems to be materially and adversely affected.

### 8.7     Retention of Jurisdiction

The Bankruptcy Court shall retain jurisdiction over this Bankruptcy Case after Confirmation of the Plan to the fullest extent provided for, or allowed, under the Bankruptcy Code and other applicable law. Specifically, but not by way of limitation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

**a.**     to consider and effect any modification of this Plan under Bankruptcy Code § 1127;

**b.**     to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

**c.**     to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

**d.**     to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

**e.** to hear and determine all causes of action;

**f.** to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

**g.** to make such Orders as are necessary and appropriate to carry out and implement the provisions of this Plan; including to affect the further assurances provided in this Plan;

**h.** to approve the reasonableness of any payments made or to be made, within the meaning of Bankruptcy Code § 1129(a)(4);

**i.** to exercise the jurisdiction granted pursuant to sections 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

**j.** to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan; and

**k.** to determine any and all motions, applications, adversary proceedings and Contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Debtor.

Nothing contained herein shall be construed to limit the rights of the Debtor to commence or prosecute any claim in any court of competent jurisdiction.

## ARTICLE IX.  MISCELLANEOUS PROVISIONS

### 9.1     Request for Relief Under Bankruptcy Code § 1129(b)

In the event any Impaired Class of Claims or Interests shall fail to accept this Plan in accordance with Bankruptcy Code § 1129(a), the Debtor requests that the Bankruptcy Court confirm this Plan in accordance with the provisions of Bankruptcy Code § 1129(b).

### 9.2     Headings

All headings utilized in this Plan are for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

### 9.3     Due Authorization

Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

### 9.4    **Further Assurances and Authorizations**

The Debtor shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions of, this Plan.

### 9.5    **Applicable Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

### 9.6    **No Interest**

Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty, or late charge is to be Allowed on any Claim subsequent to the Petition Date.

### 9.7    **Post-Confirmation Actions**

After Confirmation, the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan.

### 9.8    **Notices of Default**

In the event of a default under the Plan, the affected Claimant or its counsel shall provide notice both to counsel for the Debtor/Reorganized Debtor and the Debtor as well. The Debtor/Reorganized Debtor shall have twenty (20) days to cure the default. In the event the Debtor/Reorganized Debtor fails to cure the default within 20 days after receipt of notice, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to state law outside of the Bankruptcy Court. This is the only Notice of Default provision in this Plan.

### 9.9    **Notices**

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested. A copy of all notices provided to the Debtor under this Plan shall be sent to: (i) the Debtor at 2101 Bay Cove Court, Arlington, Texas 76013, and (ii) the Debtor's attorney, Joyce W. Lindauer, Joyce W. Lindauer Attorney, PLLC, 1412 Main Street. Suite 500 Dallas, Texas 75202 Telephone: (972) 503-4033; Fax: (972) 503-4034; Email: joyce@joycelindauer.com.

### 9.10    **Payment Dates**

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest,

on the next Business Day, except as may be provided in negotiable instruments requiring such payments.

### 9.11    De Minimis Distribution

No single distribution payment of less than $5.00 shall be required to be made to any holder of an Allowed Claim. Rather, any such de minimis distribution amount shall be held by the Debtor, added to the amount of the next distribution, and remitted to the holder of the Allowed Claim upon reaching a total greater than $5.00.

Dated: March 17, 2025.


Respectfully submitted,

  */s/ Joyce W. Lindauer*                   
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St. Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor



  */s/ Chiketa Williams*                   
Chiketa Williams, Administrator of the Debtor

# EXHIBIT "1"

**Miscellaneous:**

| | Filed: 12/17/2024 | Closed: |
|---|---|---|
| | Reopen: | Dismissed: |

[24-44654-mxm11 New Direction Home Health Care of DFW Inc.](#)

| | | | Dismissed(jdb): |
|---|---|---|---|
| Type: bk | Chapter: 11 v | Office: 4 (Ft. Worth) | Converted: Discharged: |
| Assets: y | Judge: mxm | Case Flag: EXHIBITS, REFORM, Subchapter_V, SmBus | Discharged(jdb): |

[Summary](#)  [History](#)  [Parties](#)  [Filers](#)  [Docket Sheet](#)  [Deadlines/Hearings](#)  [Status](#)  [Pending Motions](#)  [Creditors](#)  [Claims Register](#)

## U.S. Bankruptcy Court

## Northern District of Texas

Notice of Electronic Filing

The following transaction was received from Joyce W. Lindauer entered on 3/13/2025 at 6:10 PM CDT and filed on 3/13/2025

**Case Name:**       New Direction Home Health Care of DFW Inc.
**Case Number:**     [24-44654-mxm11](#)
**Document Number:** [62](#)

**Docket Text:**
Debtor-In-Possession Monthly Operating Report for Filing Period December 2024 filed by Debtor New Direction Home Health Care of DFW Inc.. (Lindauer, Joyce)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**December 2024.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686615 [Date=3/13/2025] [FileNumber=51407547-0] [948b5d294d74ed42890ae6ccca097579282d46b7f0b7ed28cf112cd7a928dcf613 b48174a9a29e63c1cab137d3e5b8dd20d4c5b6cf1dd0aac3bff38f4ae7f2dc]]

**24-44654-mxm11 Notice will be electronically mailed to:**

Joyce W. Lindauer on behalf of Debtor New Direction Home Health Care of DFW Inc.
joyce@joycelindauer.com, dian@joycelindauer.com;JoyceWLindauerAttorneyPLLC@jubileebk.net

David L. Pritchard on behalf of Creditor EECU
david@dlplegal.com, pritchardlawfirm@ecf.courtdrive.com;thepritchardlawfirmpllc@jubileebk.net

David D. Ritter on behalf of Creditor ARF Financial, LLC
dritter@ritterspencer.com

Callan Clark Searcy on behalf of Creditor Texas Workforce Commission
bk-csearcy@texasattorneygeneral.gov, sherri.simpson@oag.texas.gov

Dawn Whalen Theiss on behalf of Creditor United States Of America Internal Revenue Service
dawn.theiss@usdoj.gov, brooke.lewis@usdoj.gov;CaseView.ECF@usdoj.gov

John Kendrick Turner on behalf of Creditor Tarrant County
john.turner@lgbs.com, Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Behrooz P. Vida -SBRA V
behrooz@vidatrustee.com, cbpv11@trustesolutions.net;tracy@vidatrustee.com;bpv2117@gmail.com

**24-44654-mxm11 Notice will not be electronically mailed to:**

Joyce Lindauer on behalf of Debtor New Direction Home Health Care of DFW Inc.
Joyce Lindauer Attorney, PLLC
1412 Main Street, Ste. 500
Dallas, TX 75202

Debtor Name **New Direction Home Healthcare of DFW Inc**

United States Bankruptcy Court for the: Northern District of Texas

Case number: **24-44654-MXM**

☐ Check if this is an
amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11          12/17

Month: **December 2024**                                  Date report filed: **02/27/2025**
                                                                              MM / DD / YYYY
Line of business: **Home Healthcare**                    NAISC code: **621610**

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury
that I have examined the following small business monthly operating report and the accompanying
attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:              New Direction Home Healthcare of DFW Inc

Original signature of responsible party    *Chiketa Kelly Williams*

Printed name of responsible party          New Direction Home Healthcare of DFW Inc

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer _No_ to any of the questions in lines 1-9, attach an explanation and label it _Exhibit A._** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☐ | ☑ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☑ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer _Yes_ to any of the questions in lines 10-18, attach an explanation and label it _Exhibit B._** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☑ | ☐ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

17. Have you paid any bills you owed before you filed bankruptcy?  ☑ ☐ ☐
18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ☑ ☐ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $ _____ 4583.39

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $ _____ 38,808.24

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    − $ _____ 37,865.54

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    + $ _____ 942.70

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    = $ _____ 4717.85

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

    *(Exhibit E)*

    $ _____

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you
have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*.
Identify who owes you money, how much is owed, and when payment is due. Report the total from
*Exhibit F* here.

25. Total receivables                                                                          $ _____

    *(Exhibit F)*

## 5. Employees

| | |
|---|---|
| 26. What was the number of employees when the case was filed? | 79 |
| 27. What is the number of employees as of the date of this monthly report? | 76 |

## 6. Professional Fees

| | |
|---|---|
| 28. How much have you paid this month in professional fees related to this bankruptcy case? | $ 16,000 |
| 29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? | $ 0 |
| 30. How much have you paid this month in other professional fees? | $ 1500 |
| 31. How much have you paid in total other professional fees since filing the case? | $ 0 |

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month.
Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
| | Projected | − | Actual | = | Difference |
| | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. Cash receipts | $ _____ | − | $ 38808.24 | = | $ na |
| 33. Cash disbursements | $ _____ | − | $ 37,865.54 | = | $ na |
| 34. Net cash flow | $ _____ | − | $ 924.70 | = | $ na |

| | | |
|---|---|---|
| 35. Total projected cash receipts for the next month: | $ | 155,000 |
| 36. Total projected cash disbursements for the next month: | − $ | 145,766 |
| 37. Total projected net cash flow for the next month: | = $ | 9233.02 |

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39. Bank reconciliation reports for each account.

☐ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41. Budget, projection, or forecast reports.

☐ 42. Project, job costing, or work-in-progress reports.

Print     Save As...     Reset

**Miscellaneous:**

<table>
<tr><td></td><td>Filed: 12/17/2024</td><td>Closed:</td></tr>
<tr><td></td><td>Reopen:</td><td>Dismissed:</td></tr>
<tr><td></td><td></td><td>Dismissed(jdb):</td></tr>
<tr><td></td><td>Converted:</td><td>Discharged:</td></tr>
<tr><td></td><td></td><td>Discharged(jdb):</td></tr>
</table>

24-44654-mxm11 New Direction Home Health Care of DFW Inc.

| | | |
|---|---|---|
| Type: bk | Chapter: 11 v | Office: 4 (Ft. Worth) |
| Assets: y | Judge: mxm | Case Flag: EXHIBITS, REFORM, Subchapter_V, SmBus |

Summary    History    Parties    Filers    Docket Sheet    Deadlines/Hearings    Status    Pending Motions    Creditors    Claims Register

### U.S. Bankruptcy Court

### Northern District of Texas

Notice of Electronic Filing

The following transaction was received from Joyce W. Lindauer entered on 3/13/2025 at 6:13 PM CDT and filed on 3/13/2025

**Case Name:**      New Direction Home Health Care of DFW Inc.
**Case Number:**      24-44654-mxm11
**Document Number:** 63

**Docket Text:**
Debtor-In-Possession Monthly Operating Report for Filing Period January 2025 filed by Debtor New Direction Home Health Care of DFW Inc.. (Lindauer, Joyce)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** January 2025.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686615 [Date=3/13/2025] [FileNumber=51407550-0] [8ea2bd06ef71c74b41b7b126d51045c15c45c2d38cb6becb914cc77e0d24517d82 0821e810ab6d133a46a1d85e2db97834a6e8138f3c1648e41c96d8dd41d2fb]]

**24-44654-mxm11 Notice will be electronically mailed to:**

Joyce W. Lindauer on behalf of Debtor New Direction Home Health Care of DFW Inc.
joyce@joycelindauer.com, dian@joycelindauer.com;JoyceWLindauerAttorneyPLLC@jubileebk.net

David L. Pritchard on behalf of Creditor EECU
david@dlplegal.com, pritchardlawfirm@ecf.courtdrive.com;thepritchardlawfirmpllc@jubileebk.net

David D. Ritter on behalf of Creditor ARF Financial, LLC
dritter@ritterspencer.com

Callan Clark Searcy on behalf of Creditor Texas Workforce Commission
bk-csearcy@texasattorneygeneral.gov, sherri.simpson@oag.texas.gov

Dawn Whalen Theiss on behalf of Creditor United States of America Internal Revenue Service
dawn.theiss@usdoj.gov, brooke.lewis@usdoj.gov;CaseView.ECF@usdoj.gov

John Kendrick Turner on behalf of Creditor Tarrant County
john.turner@lgbs.com, Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Behrooz P. Vida -SBRA V
behrooz@vidatrustee.com, cbpv11@trustesolutions.net;tracy@vidatrustee.com;bpv2117@gmail.com

**24-44654-mxm11 Notice will not be electronically mailed to:**

Joyce Lindauer on behalf of Debtor New Direction Home Health Care of DFW Inc.
Joyce Lindauer Attorney, PLLC
1412 Main Street, Ste. 500
Dallas, TX 75202

Debtor Name New Direction Home Healthcare of DFW Inc

United States Bankruptcy Court for the: Northern District of Texas

Case number: 24-44654- MXM

☐ Check if this is an
amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11                12/17

Month: JANUARY 2025

Date report filed: 3/3/2024
MM / DD / YYYY

Line of business: HOME HEALTHCARE

NAISC code: 62610

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:                    New Direction Home Healthcare of DFW Inc

Original signature of responsible party    *Chileta Kelly Williams*

Printed name of responsible party    New Direction Home Healthcare of DFW Inc

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | Yes | No | N/A |
|---|---|---|---|
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** | | | |
| 1. Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☐ | ☑ | ☐ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** | | | |
| 10. Do you have any bank accounts open other than the DIP accounts? | ☑ | ☐ | ☐ |
| 11. Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

17. Have you paid any bills you owed before you filed bankruptcy?    ☐ ☑ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?    ☐ ☑ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.    $ 15,357.85

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.    $ 207561.05

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.    – $ 184033.82

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.    + $ 23527.23

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.    = $ 38885.08

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**    $ _____

    *(Exhibit E)*

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                              $ _____

    *(Exhibit F)*

## 5. Employees

| | |
|---|---|
| 26. What was the number of employees when the case was filed? | 79 |
| 27. What is the number of employees as of the date of this monthly report? | 77 |

## 6. Professional Fees

| | |
|---|---|
| 28. How much have you paid this month in professional fees related to this bankruptcy case? | $ 1000 |
| 29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? | $ 0 |
| 30. How much have you paid this month in other professional fees? | $ 0 |
| 31. How much have you paid in total other professional fees since filing the case? | $ 0 |

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
| | **Projected** | — | **Actual** | = | **Difference** |
| | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 155000 | — | $ 207561.05 | = | $ 52561.05 |
| 33. **Cash disbursements** | $ 127985.02 | — | $ 184033.82 | = | $ 56047.98 |
| 34. **Net cash flow** | $ 27014.98 | — | $ 38885.08 | = | $ 11870.01 |

| | | |
|---|---|---|
| 35. Total projected cash receipts for the next month: | $ | 155000 |
| 36. Total projected cash disbursements for the next month: | – $ | 145766.98 |
| 37. Total projected net cash flow for the next month: | = $ | 9233.02 |

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39. Bank reconciliation reports for each account.

☐ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41. Budget, projection, or forecast reports.

☐ 42. Project, job costing, or work-in-progress reports.

Print          Save As...          Reset

# EXHIBIT "2"

**Schedules/Statements/New Case Deficiencies:**

| | Filed: 12/17/2024 | Closed: |
|---|---|---|
| | Reopen: | Dismissed: |

24-44654-mxm11 New Direction Home Health Care of DFW Inc.

| | | | |
|---|---|---|---|
| Type: bk | Chapter: 11 v | Office: 4 (Ft. Worth) | Converted: |
| Assets: y | Judge: mxm | Case Flag: EXHIBITS, REFORM, Subchapter_V, SmBus | Dismissed(jdb): |
| | | | Discharged: |
| | | | Discharged(jdb): |

Summary    History    Parties    Filers    Docket Sheet    Deadlines/Hearings    Status    Pending Motions    Creditors    Claims Register

## U.S. Bankruptcy Court

## Northern District of Texas

Notice of Electronic Filing

The following transaction was received from Joyce W. Lindauer entered on 12/31/2024 at 3:17 PM CST and filed on 12/31/2024
**Case Name:**     New Direction Home Health Care of DFW Inc.
**Case Number:**     24-44654-mxm11
**Document Number:** 35

**Docket Text:**
Schedules: Schedules A-B and D-H with Summary of Assets and Liabilities (with Declaration Under Penalty of Perjury for Non-Individual Debtors,). Filed by Debtor New Direction Home Health Care of DFW Inc. (RE: related document(s)[6] Notice of deficiency). (Lindauer, Joyce)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Schedules(SlashS).PDF
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686615 [Date=12/31/2024] [FileNumber=51108491
-0] [11f3a6b6e5f9f0ab05d1fb0fc6dd49c872e1a4372ed5b51f2e9566e720a583700
ba502400dbf87ac9ac19844eff0e2cd05fdedc099bebdcfd7fc6d876eb6ded2]]

**24-44654-mxm11 Notice will be electronically mailed to:**

Joyce W. Lindauer on behalf of Debtor New Direction Home Health Care of DFW Inc.
joyce@joycelindauer.com, dian@joycelindauer.com

John Kendrick Turner on behalf of Creditor Tarrant County
john.turner@lgbs.com, Dora.Casiano-Perez@lgbs.com;Dallas.Bankruptcy@lgbs.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Behrooz P. Vida -SBRA V
behrooz@vidatrustee.com, cbpv11@trustesolutions.net;tracy@vidatrustee.com;bpv2117@gmail.com

**24-44654-mxm11 Notice will not be electronically mailed to:**

**Fill in this information to identify the case**

| | |
|---|---|
| Debtor name | **New Direction Home Health Care of DFW Inc.** |
| United States Bankruptcy Court for the: | **NORTHERN DISTRICT OF TEXAS** |
| Case number (if known) | **24-44654-mxm** |

☐ Check if this is an amended filing

Official Form 206A/B

## Schedule A/B: Assets -- Real and Personal Property    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1:    Cash and cash equivalents

1.  **Does the debtor have any cash or cash equivalents?**

    ☐ No. Go to Part 2.
    ☑ Yes. Fill in the information below.

|  | | Current value of debtor's interest |
|---|---|---|
| **All cash or cash equivalents owned or controlled by the debtor** | | |

2.  **Cash on hand**                                                                                    $500.00

3.  **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **Woodforest National Bank** | **Checking account** | 0 1 1 4 | $2.38 |
| 3.2. | **Woodforest National Bank** | **Checking account** | 1 6 7 4 | $78.06 |

4.  **Other cash equivalents**    *(Identify all)*

    Name of institution (bank or brokerage firm)

5.  **Total of Part 1**
    Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

    | $580.44 |
    |---|

### Part 2:    Deposits and prepayments

6.  **Does the debtor have any deposits or prepayments?**

    ☐ No. Go to Part 3.
    ☑ Yes. Fill in the information below.

**7.  Deposits, including security deposits and utility deposits**

    Description, including name of holder of deposit

Current value of
debtor's interest

7.1.  **Deposit:  Shiva Select Properties, LLC (re: Dickeys BBQ Pit 2469 Dalworth St, Grand Prairie, Tx 75040)**       **$5,000.00**

**8.  Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

    Description, including name of holder of prepayment

**9.  Total of Part 2.**
    Add lines 7 through 8.  Copy the total to line 81.       **$5,000.00**

## Part 3:  Accounts receivable

**10.  Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
☑ Yes.  Fill in the information below.

**11.  Accounts receivable**

| | | | | Current value of debtor's interest |
|---|---|---|---|---|
| 11a.  90 days old or less: | **$23,389.00** face amount | – | **$0.00** doubtful or uncollectible accounts | =  ..............➔  **$23,389.00** |
| 11b.  Over 90 days old: | **$13,000.00** face amount | – | **$0.00** doubtful or uncollectible accounts | =  ..............➔  **$13,000.00** |

**12.  Total of Part 3**
    Current value on lines 11a + 11b = line 12.  Copy the total to line 82.       **$36,389.00**

## Part 4:  Investments

**13.  Does the debtor own any investments?**

☑ No.  Go to Part 5.
☐ Yes.  Fill in the information below.

Valuation method
used for current value

Current value of
debtor's interest

**14.  Mutual funds or publicly traded stocks not included in Part 1**

    Name of fund or stock:

**15.  Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

    Name of entity:       % of ownership:

**16.  Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

    Describe:

**17.  Total of Part 4**
    Add lines 14 through 16.  Copy the total to line 83.       **$0.00**

## Part 5:  Inventory, excluding agriculture assets

**18.  Does the debtor own any inventory (excluding agriculture assets)?**

☐ No.  Go to Part 6.
☑ Yes.  Fill in the information below.

| General description | Date of the last physical inventory MM/DD/YYYY | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** | | | | |
| 1 case of brisket | 12/03/2024 | $245.00 | fair market value | $245.00 |
| 1 cord of mesquite firewood | | $600.00 | fair market value | $600.00 |
| **20. Work in progress** | | | | |
| **21. Finished goods, including goods held for resale** | | | | |
| **22. Other inventory or supplies** | | | | |
| **Restaurant:** Baking Potatoes $80 case (2) cases on hand, Sour Cream (1) case on hand $65 , 1 case of shredded cheese $75, 1 case of bacon bits $85, 1 case of green onions $40   **HHC:** 2 cases of alcohol pads $40 each, 1 case of glucose strips $550, 3 cases of lancets $120 | | $1,175.00 | fair market value | $1,175.00 |

**23. Total of Part 5**
Add lines 19 through 22. Copy the total to line 84.            | **$2,020.00** |

**24. Is any of the property listed in Part 5 perishable?**
☑ No
☐ Yes

**25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
☐ No
☑ Yes.  Book value  **$1,315.00**   Valuation method  **cost of goods sold**   Current value  **$1,315.00**

**26. Has any of the property listed in Part 5 been appraised by a professional within the last year?**
☑ No
☐ Yes

---

**Part 6:   Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming or fishing-related assets (other than titled motor vehicles and land)?**
☑ No.  Go to Part 7.
☐ Yes.  Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops--either planted or harvested** | | | |
| **29. Farm animals** *Examples:* Livestock, poultry, farm-raised fish | | | |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| **31. Farm and fishing supplies, chemicals, and feed** | | | |

32.  **Other farming and fishing-related property not already listed in Part 6**

33.  **Total of Part 6.**
     Add lines 28 through 32.  Copy the total to line 85.

$0.00

34.  **Is the debtor a member of an agricultural cooperative?**
     ☐ No
     ☐ Yes.  Is any of the debtor's property stored at the cooperative?
          ☐ No
          ☐ Yes

35.  **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**
     ☐ No
     ☐ Yes.  Book value _____  Valuation method _____  Current value _____

36.  **Is a depreciation schedule available for any of the property listed in Part 6?**
     ☐ No
     ☐ Yes

37.  **Has any of the property listed in Part 6 been appraised by a professional within the last year?**
     ☐ No
     ☐ Yes

**Part 7:   Office furniture, fixtures, and equipment; and collectibles**

38.  **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

     ☐ No.  Go to Part 8.
     ☒ Yes.  Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39.  Office furniture** | | | |
| **2x couches** **8x desks** | $1,900.00 | fair market value | $1,000.00 |
| **Office Shelving** | $1,000.00 | fair market value | $200.00 |
| **40.  Office fixtures** | | | |
| **41.  Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| **8 computers** **2 copiers** **1 fax machine** **1 portable wifi box** | $17,550.00 | fair market value | $1,650.00 |
| **2 printer/copiers** **8 desk phones** **5 cell phones** | $11,500.00 | fair market value | $11,500.00 |

42.  **Collectibles**  *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

43.  **Total of Part 7.**
     Add lines 39 through 42.  Copy the total to line 86.

$14,350.00

44.  **Is a depreciation schedule available for any of the property listed in Part 7?**
     ☒ No
     ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
　　☑ No
　　☐ Yes

## Part 8:　Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

　　☐ No.  Go to Part 9.
　　☑ Yes.  Fill in the information below.

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method<br>used for current value | Current value of<br>debtor's interest |
|---|---|---|---|

47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

| | | | | |
|---|---|---|---|---|
| 47.1. | **2017 Land Rover Discovery (VIN:  x1077)** | **$17,000.00** | **Kelly Blue Book** | **$13,000.00** |
| 47.2. | **2015 Range Rover Evoque (VIN: x3960)** | **$15,000.00** | **Kelly Blue Book** | **$8,785.00** |

48. **Watercraft, trailers, motors, and related accessories** Examples: Boats
trailers, motors, floating homes, personal watercraft, and fishing vessels

49. **Aircraft and accessories**

50. **Other machinery, fixtures, and equipment (excluding farm
machinery and equipment)**

　　**1 double deep fryer**
　　**1 food warmer**
　　**1 freezer**
　　**1 cooler**
　　**1 soda machine**
　　**1 drink cooler**　　　　　　　　　　**$10,700.00**　　**Fair market value**　　　　**$10,700.00**

51. **Total of Part 8.**
Add lines 47 through 50.  Copy the total to line 87.　　　　　　　| **$32,485.00** |

52. **Is a depreciation schedule available for any of the property listed in Part 8?**
　　☑ No
　　☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
　　☑ No
　　☐ Yes

## Part 9:　Real property

54. **Does the debtor own or lease any real property?**

　　☐ No.  Go to Part 10.
　　☑ Yes.  Fill in the information below.

**55.** Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest

| Description and location of property<br>Include street address or other description<br>such as Assessor Parcel Number (APN),<br>and type of property (for example,<br>acreage, factory, warehouse, apartment or<br>office building), if available. | Nature and extent<br>of debtor's interest<br>in property | Net book value of<br>debtor's interest<br>(Where available) | Valuation method<br>used for current<br>value | Current value of<br>debtor's interest |
|---|---|---|---|---|
| **55.1. Dickeys BBQ Pit**<br>**2469 Dalworth St.**<br>**Grand Prairie, TX 75050**<br><br>**Dickeys BBQ Pit, Grand Prairie, TX**<br>**75050**<br>**Leased restaurant property** | **Lease** | **$0.00** | | **$0.00** |
| **55.2. Newport Properties**<br>**2101 Bay Cove Ct.**<br>**Arlington TX 76013**<br>**Newport Properties, Arlington, TX**<br>**76013**<br>**Newport Properties**<br>**2101 Bay Cove Ct.**<br>**Arlington TX 76013** | **Rental Property** | **Unknown** | | **Unknown** |

**56.** Total of Part 9.

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.  Copy the total to line 88.    | **$0.00** |

**57. Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No
☐ Yes

**58. Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No
☐ Yes

## Part 10:  Intangibles and Intellectual Property

**59. Does the debtor have any interests in intangibles or intellectual property?**

☐ No.  Go to Part 11.
☑ Yes.  Fill in the information below.

| General description | Net book value of<br>debtor's interest<br>(Where available) | Valuation method<br>used for current value | Current value of<br>debtor's interest |
|---|---|---|---|
| **60. Patents, copyrights, trademarks, and trade secrets** | | | |
| **61. Internet domain names and websites** | | | |
| **www.eaglehhc.com** | **$0.00** | | **$0.00** |
| **62. Licenses, franchises, and royalties** | | | |
| **State License (New Direction Home Health Care)** | **$0.00** | | **$0.00** |
| **63. Customer lists, mailing lists, or other compilations** | | | |
| **Patient lists.** | **$0.00** | | **$0.00** |
| **64. Other intangibles, or intellectual property** | | | |

**65.  Goodwill**

**66.  Total of Part 10.**
     Add lines 60 through 65.  Copy the total to line 89.                                    $0.00

**67.  Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**
     ☐ No
     ☑ Yes

**68.  Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
     ☑ No
     ☐ Yes

**69.  Has any of the property listed in Part 10 been appraised by a professional within the last year?**
     ☑ No
     ☐ Yes

## Part 11:  All other assets

**70.  Does the debtor own any other assets that have not yet been reported on this form?**
     Include all interests in executory contracts and unexpired leases not previously reported on this form.

     ☑ No.  Go to Part 12.
     ☐ Yes.  Fill in the information below.

                                                                                Current value of
                                                                                debtor's interest

**71.  Notes receivable**

     Description (include name of obligor)

**72.  Tax refunds and unused net operating losses (NOLs)**

     Description (for example, federal, state, local)

**73.  Interests in insurance policies or annuities**

**74.  Causes of action against third parties (whether or not a lawsuit has been filed)**

**75.  Other contingent and unliquidated claims or causes of action of every nature,
     including counterclaims of the debtor and rights to set off claims**

**76.  Trusts, equitable or future interests in property**

**77.  Other property of any kind not already listed**  *Examples:* Season tickets, country club membership

**78.  Total of Part 11.**
     Add lines 71 through 77.  Copy the total to line 90.                                    $0.00

**79.  Has any of the property listed in Part 11 been appraised by a professional within the last year?**
     ☐ No
     ☐ Yes

## Part 12: Summary

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | **$580.44** | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | **$5,000.00** | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | **$36,389.00** | |
| 83. **Investments.** *Copy line 17, Part 4.* | **$0.00** | |
| 84. **Inventory.** *Copy line 23, Part 5.* | **$2,020.00** | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | **$0.00** | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | **$14,350.00** | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | **$32,485.00** | |
| 88. **Real property.** *Copy line 56, Part 9* .............................................➔ | | **$0.00** |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | **$0.00** | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + **$0.00** | |
| 91. **Total.** Add lines 80 through 90 for each column.   91a. | **$90,824.44**  +  91b. | **$0.00** |

92. **Total of all property on Schedule A/B.**  Lines 91a + 91b = 92 .......................................................................................    **$90,824.44**

# EXHIBIT "3"

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
# New Direction Home Health Care of DFW, Inc.

|  |  |  | May | June | July | Aug | Sept |
|---|---|---|---|---|---|---|---|
|  |  |  | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 |
| **INCOME** |  |  |  |  |  |  |  |
|  | | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
|  | | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
|  | | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** |  |  |  |  |  |  |  |
|  | | Retainer | 15,000.00 |  |  |  |  |
|  | | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
|  | | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
|  | | **TOTAL EXPENSES** | 176,266.98 | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** |  |  |  |  |  |  |
|  | - | Allowed Administrative Claims |  |  |  |  |  |
|  | - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
|  | - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 | 69.70 |
|  |  | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 | 238.28 |
|  | 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 | 283.07 |
|  | 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 | 188.71 |
|  | 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
|  | 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
|  | 5 | Equity Interest Holders |  |  |  |  |  |
|  |  | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** |  |  | -2,667.27 | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** |  |  | -2,667.27 | 9,665.46 | 21,998.19 | 34,330.92 | 46,663.65 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
# New Direction Home Health Care of DFW, Inc.

| | | Oct | Nov | Dec | Jan |
|---|---|---|---|---|---|
| | | Month 6 | Month 7 | Month 8 | Month 9 |
| **INCOME** | | | | | |
| | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | | | | | |
| | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | |
| | Retainer | | | | |
| | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | | | | | |
| | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** | | | | |
| - | Allowed Administrative Claims | | | | |
| - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| 2 | Allowed Secured Claims of LoanStar Title Co  / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| 3 | Allowed Secured Claims of  ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| 5 | Equity Interest Holders | | | | |
| | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | 58,996.38 | 71,329.11 | 83,661.84 | 95,994.57 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
## New Direction Home Health Care of DFW, Inc.

| | | | Feb | Mar | Apr | May |
|---|---|---|---|---|---|---|
| | | | Month | Month | Month | Month |
| | | | 10 | 11 | 12 | 13 |
| **INCOME** | | | | | | |
| | | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | | | | | | |
| | | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | | |
| | | Retainer | | | | |
| | | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | | | | | | |
| | | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** | | | | | |
| | - | Allowed Administrative Claims | | | | |
| | - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| | - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| | 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| | 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| | 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| | 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| | 5 | Equity Interest Holders | | | | |
| | | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | | 108,327.30 | 120,660.03 | 132,992.76 | 145,325.49 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
# New Direction Home Health Care of DFW, Inc.

|  |  |  | June | July | Aug | Sept |
|---|---|---|---|---|---|---|
|  |  |  | Month | Month | Month | Month |
|  |  |  | 14 | 15 | 16 | 17 |
| **INCOME** |  |  |  |  |  |  |
|  |  | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
|  |  | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
|  |  |  |  |  |  |  |
|  |  | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** |  |  |  |  |  |  |
|  |  | Retainer |  |  |  |  |
|  |  | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
|  |  | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
|  |  |  |  |  |  |  |
|  |  | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** |  |  |  |  |  |
|  | - | Allowed Administrative Claims |  |  |  |  |
|  | - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
|  | - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
|  |  | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
|  | 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
|  | 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
|  | 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
|  | 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
|  | 5 | Equity Interest Holders |  |  |  |  |
|  |  | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** |  |  | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** |  |  | 157,658.22 | 169,990.95 | 182,323.68 | 194,656.41 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
## New Direction Home Health Care of DFW, Inc.

| | | Oct | Nov | Dec | Jan |
|---|---|---|---|---|---|
| | | Month | Month | Month | Month |
| | | 18 | 19 | 20 | 21 |
| **INCOME** | | | | | |
| | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | | | | | |
| | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | |
| | Retainer | | | | |
| | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | | | | | |
| | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** Class | | | | | |
| - | Allowed Administrative Claims | | | | |
| - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| 5 | Equity Interest Holders | | | | |
| | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | 206,989.14 | 219,321.87 | 231,654.60 | 243,987.32 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
# New Direction Home Health Care of DFW, Inc.

| | Class | | Feb | Mar | Apr | May |
|---|---|---|---|---|---|---|
| | | | Month | Month | Month | Month |
| | | | 22 | 23 | 24 | 25 |
| **INCOME** | | | | | | |
| | | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | | | | | | |
| | | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | | |
| | | Retainer | | | | |
| | | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | | | | | | |
| | | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** | | | | | |
| | - | Allowed Administrative Claims | | | | |
| | - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| | - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| | 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| | 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| | 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| | 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| | 5 | Equity Interest Holders | | | | |
| | | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | | 256,320.05 | 268,652.78 | 280,985.51 | 293,318.24 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
## New Direction Home Health Care of DFW, Inc.

| | | June | July | Aug | Sept |
|---|---|---|---|---|---|
| | | Month | Month | Month | Month |
| | | 26 | 27 | 28 | 29 |
| **INCOME** | | | | | |
| | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | | | | | |
| | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | |
| | Retainer | | | | |
| | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | | | | | |
| | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS**    **Class** | | | | | |
| - | Allowed Administrative Claims | | | | |
| - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| 5 | Equity Interest Holders | | | | |
| | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | 305,650.97 | 317,983.70 | 330,316.43 | 342,649.16 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
## New Direction Home Health Care of DFW, Inc.

| | Class | | Oct Month 30 | Nov Month 31 | Dec Month 32 | Jan Month 33 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| | | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | | |
| | | Retainer | | | | |
| | | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** | | | | | |
| | - | Allowed Administrative Claims | | | | |
| | - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| | - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| | 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| | 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| | 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| | 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| | 5 | Equity Interest Holders | | | | |
| | | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | | 354,981.89 | 367,314.62 | 379,647.35 | 391,980.08 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
## New Direction Home Health Care of DFW, Inc.

| | Class | | Feb Month 34 | Mar Month 35 | Apr Month 36 | May Month 37 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| | | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | | |
| | | Retainer | | | | |
| | | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** | | | | | |
| | - | Allowed Administrative Claims | | | | |
| | - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| | - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| | 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| | 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| | 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| | 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| | 5 | Equity Interest Holders | | | | |
| | | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | | 404,312.81 | 416,645.54 | 428,978.27 | 441,311.00 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
# New Direction Home Health Care of DFW, Inc.

|  |  | June | July | Aug | Sept |
|---|---|---|---|---|---|
|  |  | Month 38 | Month 39 | Month 40 | Month 41 |
| **INCOME** | | | | | |
| | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | |
| | Retainer | | | | |
| | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** **Class** | | | | | |
| - | Allowed Administrative Claims | | | | |
| - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| 5 | Equity Interest Holders | | | | |
| | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | 453,643.73 | 465,976.46 | 478,309.19 | 490,641.92 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
# New Direction Home Health Care of DFW, Inc.

| | | Oct | Nov | Dec | Jan |
|---|---|---|---|---|---|
| | | Month | Month | Month | Month |
| | | 42 | 43 | 44 | 45 |
| **INCOME** | | | | | |
| | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | | | | | |
| | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | |
| | Retainer | | | | |
| | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | | | | | |
| | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** Class | | | | | |
| - | Allowed Administrative Claims | | | | |
| - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| 5 | Equity Interest Holders | | | | |
| | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | 502,974.65 | 515,307.38 | 527,640.11 | 539,972.84 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
# New Direction Home Health Care of DFW, Inc.

| | | | Feb | Mar | Apr | May |
|---|---|---|---|---|---|---|
| | | | Month | Month | Month | Month |
| | | | 46 | 47 | 48 | 49 |
| **INCOME** | | | | | | |
| | | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | | | | | | |
| | | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | | |
| | | Retainer | | | | |
| | | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | | | | | | |
| | | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** | | | | | |
| | - | Allowed Administrative Claims | | | | |
| | - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| | - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| | 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| | 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| | 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| | 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| | 5 | Equity Interest Holders | | | | |
| | | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | | 552,305.57 | 564,638.30 | 576,971.03 | 589,303.76 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
# New Direction Home Health Care of DFW, Inc.

|  |  |  | June | July | Aug | Sept |
|---|---|---|---|---|---|---|
|  |  |  | Month | Month | Month | Month |
|  |  |  | 50 | 51 | 52 | 53 |
| **INCOME** |  |  |  |  |  |  |
|  |  | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
|  |  | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
|  |  |  |  |  |  |  |
|  |  | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** |  |  |  |  |  |  |
|  |  | Retainer |  |  |  |  |
|  |  | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
|  |  | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
|  |  |  |  |  |  |  |
|  |  | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** |  |  |  |  |  |
|  | - | Allowed Administrative Claims |  |  |  |  |
|  | - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
|  | - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
|  |  | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
|  | 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
|  | 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
|  | 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
|  | 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
|  | 5 | Equity Interest Holders |  |  |  |  |
|  |  | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** |  |  | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** |  |  | 601,636.49 | 613,969.22 | 626,301.95 | 638,634.68 |

# CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
## New Direction Home Health Care of DFW, Inc.

| | | | Oct | Nov | Dec | Jan |
|---|---|---|---|---|---|---|
| | | | Month | Month | Month | Month |
| | | | 54 | 55 | 56 | 57 |
| **INCOME** | | | | | | |
| | | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 | 155,000.00 |
| | | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 | 27,000.00 |
| | | | | | | |
| | | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | | |
| | | Retainer | | | | |
| | | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 | 136,766.98 |
| | | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 | 24,500.00 |
| | | | | | | |
| | | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** | | | | | |
| | - | Allowed Administrative Claims | | | | |
| | - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 | 1,317.67 |
| | - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 | 69.70 |
| | | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 | 238.28 |
| | 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 | 283.07 |
| | 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 | 188.71 |
| | 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 | 1,302.86 |
| | 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| | 5 | Equity Interest Holders | | | | |
| | | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | | 12,332.73 | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | | 650,967.41 | 663,300.14 | 675,632.87 | 687,965.60 |

## CHAPTER 11 (SubChapter V) DEBTOR PROJECTIONS
## New Direction Home Health Care of DFW, Inc.

| | | | Feb | Mar | Apr |
|---|---|---|---|---|---|
| | | | Month | Month | Month |
| | | | 58 | 59 | 60 |
| **INCOME** | | | | | |
| | | Total Receipts (HHC) | 155,000.00 | 155,000.00 | 155,000.00 |
| | | Total Receipts (Dickeys BBQ) | 27,000.00 | 27,000.00 | 27,000.00 |
| | | | | | |
| | | **NET INCOME** | 182,000.00 | 182,000.00 | 182,000.00 |
| **EXPENSES** | | | | | |
| | | Retainer | | | |
| | | Total Disbursements (HHC) | 136,766.98 | 136,766.98 | 136,766.98 |
| | | Total Disbursements (Dickeys BBQ) | 24,500.00 | 24,500.00 | 24,500.00 |
| | | | | | |
| | | **TOTAL EXPENSES** | 161,266.98 | 161,266.98 | 161,266.98 |
| **PLAN PAYMENTS** | **Class** | | | | |
| | - | Allowed Administrative Claims | | | |
| | - | Priority IRS Tax Claims | 1,317.67 | 1,317.67 | 1,317.67 |
| | - | Priority Tax Claims (Tarrant County) | 69.70 | 69.70 | 69.70 |
| | | Priority Claims (Texas Workforce Commission) | 238.28 | 238.28 | 238.28 |
| | 1 | Allowed Secured Claims of Educational Employees Credit Union (EECU) | 283.07 | 283.07 | 283.07 |
| | 2 | Allowed Secured Claims of LoanStar Title Co / Integrity Texas Funding | 188.71 | 188.71 | 188.71 |
| | 3 | Allowed Secured Claims of ARF Financial, LLC | 1,302.86 | 1,302.86 | 1,302.86 |
| | 4 | Allowed General Unsecured Claims | 5,000.00 | 5,000.00 | 5,000.00 |
| | 5 | Equity Interest Holders | | | |
| | | **TOTAL PLAN PAYMENTS** | 8,400.29 | 8,400.29 | 8,400.29 |
| **NET INCOME** | | | 12,332.73 | 12,332.73 | 12,332.73 |
| **CUMULATIVE INCOME** | | | 700,298.33 | 712,631.06 | 724,963.79 |